OVERTON, Justice.
We have on appeal a decision by the Florida Public Service Commission (the Commission) resolving a territorial dispute between Gulf Coast Electric Cooperative, Inc. (Gulf Coast) and Gulf Power Company (Gulf Power). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. For the reasons expressed, we reverse the Commission’s order awarding service to Gulf Power and remand for entry of an order awarding service to Gulf Coast.
The relevant, unrefuted facts in this record are as follows. In April 1993, Gulf Coast became aware that the Florida Department of Corrections (DOC) was planning to locate a prison in West Florida and was considering sites in several counties, including one in Washington County. In that same month, Gulf Coast made a public proposal to the Washington County Commission for a $45,-000 grant and for assistance in securing a loan of $300,000 to acquire Washington County property for the prison. Gulf Power, which also served the Washington County area, made no similar proposal. The loan and grant were put in place and a site was *121 selected and secured. Gulf Coast was selected to provide service to the site by Washington County, and DOC approved that choice.
To serve the prison, Gulf Coast relocated its existing Red Sapp Road single-phase line, which was located on the prison site, and upgraded the line to three-phase at a total cost of $51,579. The relocation cost was $36,997 and the upgrade to three-phase cost was $14,583. This existing line had to be relocated, regardless of whether Gulf Coast or Gulf Power served the prison. The line was relocated by Gulf Coast across the road from Gulf Power’s existing three-phase line that was constructed during the early 1970s.
In September 1993, Gulf Power filed with the Commission a petition seeking to serve the prison and asserting that Gulf Coast had constructed facilities that duplicated Gulf Power’s. In resolving the dispute, the Commission followed Florida Administrative Code Rule 24-6.0441(2) (1993), which provides:
(2) In resolving territorial disputes, the Commission may consider, but not be limited to consideration of:
(a) the capability of each utility to provide reliable electric service within the disputed area with its existing facilities and the extent to which additional facilities are needed;
(b) the nature of the disputed area including population and the type of utilities seeking to serve it, and degree of urbanization of the area and its proximity to other urban areas, and the present and reasonably foreseeable future requirements of the area for other utility services;
(c) the cost of each utility to provide distribution and subtransmission facilities to the disputed area presently and in the future; and
(d) customer preference if all other factors are substantially equal.
The Commission also applied section 366.04(5), Florida Statutes (1993), which provides:
(5) The commission shall further have jurisdiction over the planning, development, and maintenance of a coordinated electric power grid throughout Florida to assure an adequate and reliable source of energy for operational and emergency purposes in Florida and the avoidance of further uneconomic duplication of generation, transmission, and distribution facilities.
(Emphasis added.)
Under subsection (a) of rule 25-6.0441(2), the Commission found that both utilities had been serving the same area for more than twenty years and that the utilities had a “comparable ability” to serve the prison. Specifically, the Commission found:
Both utilities have been serving customers in the vicinity of the intersection of County Road 279 and State Road 77 for over 20 years. Gulf Coast has served retail customers along Red Sapp Road since 1949-50. Gulf Coast has also maintained two-phase and three-phase service adjacent to the correctional facility site since 1950. Currently, Gulf Coast is serving 665 customers within 5 miles of the site. Gulf Power currently has 532 metered customers within five miles of the site, 330 of which are in Sunny Hills.
The Commission also found that “both utilities have adequate facilities to serve the prison, both are capable of providing reliable electric service, and therefore both have comparable ability to serve.”
Subsection (b) of rule 24-6.0441(2), which concerns the nature of the disputed area (rural with small commercial development), was not at issue in this proceeding.
Under subsection (c) of the rule, the Commission found that Gulf Coast had expended .$14,583 upgrading its single-phase line to a three-phase line in order to provide service. Because Gulf Power had an existing three-phase line capable of providing service to the prison, the Commission found that the $14,-583 represented the cost differential between the two utilities’ “cost to serve.”
The Commission found subsection (d), customer preference, to be inapplicable, concluding that it could consider customer preference in resolving territorial disputes only if all other factors were substantially equal. The Commission determined, however, that all other factors in this ease were not equal *122 because Gulf Coast had duplicated Gulf Power’s existing lines and had engaged in a “race to serve.” In making this determination, it said:
We have decided that Gulf Power shall provide electric service to the new correctional facility in Washington County. Our primary reason for this is that Gulf Coast duplicated Gulf Power’s existing facilities in order to serve the prison. We understand that the area in dispute is primarily rural. We understand that the additional cost to Gulf Coast to serve the facility is relatively small. We believe that Gulf Coast is as able as Gulf Power to serve reliably, and we are aware that the customer prefers Gulf Coast even though its rates are higher. We simply cannot ignore the fact that Gulf Coast’s upgrade of the relocated Red Sapp Road single-phase line to three-phase duplicated Gulf Power’s existing facilities. We always consider whether one utility has uneeonomically duplicated the facilities of the other in a “race to serve” an area in dispute, and we do not condone such action.
[[Image here]]
... [W]e are very conscious of the role Gulf Power played in this matter. Gulf Coast made the effort and spent the money necessary to bring the new correctional facility to Washington County. But for Gulf Coast’s efforts, the facility would not be there for anyone to serve. Gulf Power was aware of Gulf Coast’s efforts, but said nothing.
(Emphasis added.)
Based on these facts, the Commission awarded service to Gulf Power and directed Gulf Power to reimburse Gulf Coast for the $36,997 cost of relocating the Red Sapp Road line. The Commission also ordered the two companies to develop a territorial agreement to avoid future duplication of facilities and to establish territorial boundaries.
Gulf Coast has appealed the Commission’s award of service to Gulf Power; Gulf Power has cross-appealed the Commission’s directive that Gulf Power reimburse Gulf Coast for the cost of relocation. The Commission’s order regarding the development of a territorial agreement is not at issue. Because of our resolution of Gulf Coast’s appeal, Gulf Power’s cross-appeal is rendered moot.
In its appeal, Gulf Coast contends that the Commission erred in finding that Gulf Coast uneeonomically duplicated Gulf Power’s facilities, in finding that Gulf Coast engaged in a “race to serve,” and in failing to consider customer preference. Additionally, because Gulf Power was the first to intrude into Gulf Coast’s historic service area and because Gulf Power was the first to duplicate services, Gulf Coast asserts that it should be allowed to provide service to the prison.
In reviewing Gulf Coast’s assertions, this Court must determine whether the order complained of meets the essential requirements of law and whether there is competent, substantial evidence in the record to support the Commission’s findings. Gulf Power Co. v. Public Serv. Comm’n, 480 So.2d 97 (Fla.1985); Citizens v. Public Service Comm’n, 464 So.2d 1194 (Fla.1985). Based upon the unrefuted facts and the Commission’s own findings, we conclude that the Commission erred in failing to consider customer preference and abused its discretion in awarding service to Gulf Power. We reach this decision after finding, under the unique factual circumstances of this cases, that there is no competent, substantial evidence in the record to support the Commission’s findings that Gulf Coast (1) uneeonomically duplicated Gulf Power’s facilities and (2) engaged in a “race to serve” the prison.
First, we address the Commission’s findings regarding uneconomic duplication. The record reflects that Gulf Coast has been the historic provider of power to this area since the early 1950s and that Gulf Coast’s single-phase line was already in place at the site of the prison before Gulf Coast sought to provide service. Further, Gulf Coast would have been required to move its line regardless of who provided power to the prison to allow for the construction of the prison. It was only after Gulf Coast was selected by DOC to provide service to the prison that it moved its line and, in order to serve the prison, upgraded the line to three-phase at a cost of $14,583. The Commission itself characterized this sum as “relatively small.” Al *123 though Gulf Power did have a three-phase line available to serve the prison, we cannot agree that the relatively small cost incurred by Gulf Coast in upgrading its existing line was sufficient to characterize this upgrade as “uneconomic.” This is especially true given the fact that Gulf Coast had to construct a new line regardless of who served the prison.
In its argument before the Court, the Commission asserts that the actual cost is only one factor to be considered in determining uneconomic duplication. The Commission states that lost revenues for the non-serving utility, aesthetic and safety problems, proximity of lines, adequacy of existing lines, whether there has been a “race to serve,” and other concerns must be considered in evaluating whether an uneconomic duplication has occurred. We do not disagree that these factors must be considered. In this case, however, both utilities were already serving the area in question. Additionally, Gulf Coast had to move the line regardless of who provided service, and the cost for upgrading the line was relatively small. Compare, for instance, the costs incurred for the upgrade in this case with the costs incurred in Gulf Power Co. v. Public Service Commission, 480 So.2d 97 (Fla.1985) (difference between Gulf Coast’s $27,000 cost to provide service and Gulf Power’s $200,480 cost to provide service found to be considerable). The cost differential in this case is de minim-is in comparison to the cost differential in that case.
Next, we address the Commission’s conclusion that Gulf Coast engaged in a “race to serve.” As noted previously, Gulf Coast was the historic provider of service to this area and was already serving a substantial number of customers in this area. Additionally, Gulf Coast’s line had to be moved regardless of who served the prison. Although Gulf Coast concedes that it acted quickly in its efforts, the record reflects that Gulf Coast did so to convince DOC to choose Washington County as a site for the prison rather than to preempt Gulf Power from serving the prison. Moreover, Gulf Coast never attempted to hide its actions in attempting to bring the prison to Washington County. As acknowledged by the Commission, but for the actions of Gulf Coast, there would be no prison to serve. Under these circumstances, we conclude that there is no substantial, competent evidence to support the Commission’s finding that Gulf Coast engaged in a “race to serve.”
Given our conclusion that Gulf Coast did not uneconomically duplicate Gulf Power’s facilities or engage in a “race to serve,” we find that the record supports the conclusion that the factors set forth in rule 25-6.0441 are substantially equal. As the Commission noted, both utilities have been serving the area for many years and both have a comparable ability to serve the prison; the nature of the disputed area, is not in dispute; and the cost differential between the two utilities’ cost to serve is relatively small. Consequently, we find that customer preference should have been considered as a significant factor in this case. See rule 25-6.0441(d) (Commission to consider customer preference if all other factors are substantially equal). Because both DOC and Washington County have indicated their desire to have Gulf Coast provide service to the prison, we conclude that Gulf Coast should be awarded service.
Accordingly, we reverse the order of the Commission awarding service to Gulf Power and remand for entry of an order awarding service to Gulf Coast.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.